## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY W. ORR, Sr., | : | Civil No. 1:18-CV-00422 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK JUDSON COLLIN, M.D., *et al.*, | : | |
| | : | |
| Defendants and | : | |
| Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| VIRTUAL RADIOLOGIC | : | |
| PROFESSIONALS, LLC and | : | |
| ALISON MARIE ROBINETTE, M.D., | : | |
| | : | |
| Third-Party Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is a professional negligence case in which Plaintiff Jeffrey W. Orr

("Orr") alleges that two emergency room doctors, Mark Judson Collin ("Collin")

and Nicholaos G. Kalathas ("Kalathas"), were negligent in providing medical care

to him, which eventually resulted in the amputation of his right leg.  Orr brings

claims in the case against Collin, Kalathas, and several supervisory defendants who

are allegedly vicariously liable for Collin and Kalathas's negligence.  Defendants

deny liability and bring third-party claims for contribution against Alison Marie

Robinette, M.D. ("Robinette") and Virtual Radiologic Professionals, LLC

(collectively referred to as "Third-Party Defendants"), alleging that Robinette's

negligence caused Orr's injury and that Virtual Radiologic Professionals is vicariously liable for Robinette's negligence. The case is presently before the court on a motion for summary judgment filed by Third-Party Defendants. For the reasons that follow, the motion is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

In September 2014, a vascular surgeon diagnosed Orr as having an aneurysm in an arterial blood vessel of his right leg. (Doc. 25 ¶ 15.) The surgeon performed a femoral-popliteal arterial graft on Orr later that month to restore adequate and proper blood flow in the leg. (*Id.*) Orr continued to see the surgeon for follow-up visits for approximately two years after the surgery, during which blood flow studies continued to show that Orr had good perfusion in the leg and that the surgery had been successful. (*Id.*)

---

[1] The court notes that Third-Party Defendants have not filed a statement of material facts in connection with their motion for summary judgment as required by Local Rule 56.1. Nevertheless, the court will proceed with consideration of the motion despite the violation of the local rules because the parties' pleadings provide a sufficient factual basis to rule on the Third-Party Defendants' motion. Additionally, because many of the facts necessary to understand the Third-Party Plaintiffs' claims against Third-Party Defendants were only pleaded in connection with Orr's original claims, this section contains facts that are derived from Orr's complaint, *see* Doc. 25, several of which are in dispute between the parties. These disputed facts are provided only as background information to understand the case. Any facts that are relevant to the Third-Party Defendants' motion for summary judgment shall be construed in the light most favorable to Third-Party Plaintiffs as the non-moving party. *See, e.g.*, *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).

On March 13, 2017, Orr visited the Meritus Urgent Care facility in Hagerstown, Maryland, with complaints of right foot pain.  (*Id.* ¶ 16.)  Personnel at the urgent care facility advised Orr to seek emergency medical care, and he accordingly went to the emergency room at Chambersburg Hospital in Chambersburg, Pennsylvania later that day.  (*Id.* ¶¶ 16–17.)

While in the emergency room, Orr received medical care from Defendants Collin and Kalathas.  (*Id.* ¶ 17.)  Collin and Kalathas obtained ultrasound studies of Orr's lower right leg arteries and veins in order to assess the blood flow in his right leg.  (*Id.* ¶ 18.)  The ultrasound studies were interpreted by Robinette, a radiologist who was working remotely from Arizona.  (Doc. 67-2 ¶¶ 5, 7; Doc. 75 ¶¶ 5, 7.)  Robinette authored a report on the ultrasound studies, in which she offered the following findings and impressions:

> Right common femoral artery: No acute findings. No occlusion or significant stenosis. Normal waveform. Right superficial femoral artery: No acute findings. No occlusion or significant stenosis. Normal waveform. Right popliteal artery: Right popliteal artery aneurysm, measuring 2.1 x 2.3 cm. Popliteal artery is occluded. Right calf /foot arteries: Monophasic dampened waveform in the proximal posterior tibial artery. Elevated velocity in the mid PTA, measuring 107 cm /s. Monophasic dampened waveform in the distal PTA. Occlusion of the right peroneal artery. Monophasic waveform in the right anterior tibial artery. Monophasic waveform in the right dorsalis pedis artery. Soft tissues: Unremarkable. Impression: (1) right popliteal artery aneurism [sic] and occlusion. (2) Occlusion of the right peroneal artery. (3) high-grade narrowing of the mid right PTA.

(Doc. 67-2 ¶ 25; Doc. 75 ¶ 25.)  Robinette's report did not reference Orr's previous bypass graft, it did not mention that there was an interval change in flow between the ultrasound studies and a prior comparison study done in November 2016, and it did not communicate any critical results to Collin and Kalathas.  (Doc. 67-2 ¶ 26; Doc. 75 ¶ 26.)  Collin and Kalathas did not obtain any consultation from a vascular surgeon with regard to Orr's care, nor did they admit Orr to the hospital for further care.  (Doc. 25 ¶ 19.)  Later on March 13, 2017, Collin and Kalathas discharged Orr from the emergency room with an antibiotic prescription and instructions to return to the hospital if his condition worsened.  (*Id.* ¶¶ 19, 22.)

On March 19, 2017, the condition of Orr's leg got suddenly worse, making him unable to walk and unable to put weight on the leg.  (*Id.* ¶ 22.)  Orr accordingly returned to the Chambersburg Hospital emergency room that day. (*Id.*)  Personnel from the hospital consulted with a vascular surgeon, after which it was concluded that Orr had suffered a prolonged period of time without adequate arterial blood flow and without proper oxygenation of the tissues in his right leg. (*Id.*)  As a result, doctors were required to perform an emergency amputation of the leg below the knee.  (*Id.*)  Following the amputation, Orr was discharged to a rehabilitation facility, where he remained for more than a month.  (*Id.*)

Orr initiated this case through the filing of a complaint on February 20, 2018, Doc. 1, and then filed an amended complaint on June 4, 2018, naming as

4

defendants Collin, Kalathas, Chambersburg Hospital, Inc., Summit Health, Inc., Summit Physician Services, Cumberland Valley Emergency Medical Associates, Ltd., and Wellspan York Hospital (collectively referred to as "Defendants").  (Doc. 25.)  Collin and Kalathas answered the complaint on June 25, 2018, Chambersburg Hospital, Summit Health, and Summit Physician Services answered the complaint on June 29, 2018, and Cumberland Valley Emergency Medical Associates and Wellspan York Hospital answered the complaint on August 10, 2018.  (Docs. 27–28, 37.)

On February 11, 2019, Defendants Collin, Kalathas, Cumberland Valley Emergency Medical Associates, and Wellspan York Hospital (collectively referred to as "Third-Party Plaintiffs") filed a motion for leave to file a third-party complaint against Robinette and Virtual Radiologic Professionals.  (Doc. 46.) United States District Judge Yvette Kane granted the motion on February 27, 2019, *see* Doc. 48, and Third-Party Plaintiffs filed their complaint against Third-Party Defendants the next day.  (Doc. 49.)  Virtual Radiologic Professionals answered the third-party complaint on April 18, 2019, and Robinette moved to dismiss the third-party complaint on April 24, 2019.  (Docs. 65–66.)  Judge Kane then granted the Third-Party Plaintiffs' motion for leave to file an amended third-party complaint on October 9, 2019, *see* Doc. 72, and the amended third-party complaint accordingly became the operative pleading against Third-Party Defendants.  (*See*

5

Doc. 67-2.)  Third-Party Defendants answered the amended complaint on November 12, 2019.  (Doc. 75.)  The case was reassigned to the undersigned pursuant to a verbal order on November 19, 2019.

Third-Party Defendants filed the instant motion for summary judgment on August 14, 2020, along with a supporting brief.  (Docs. 86–87.)  Third-Party Plaintiffs filed a brief opposing the motion for summary judgment on September 2, 2020, and filed a motion for leave to file a supplemental expert report on the same day.  (Docs. 92–93.)  Third-Party Defendants filed a reply brief in support of the motion for summary judgment on September 14, 2020.  (Doc. 95.)  Third-Party Plaintiffs then filed a motion to have their motion for leave to file a supplemental expert report deemed unopposed on September 17, 2020, *see* Doc. 96, after which Third-Party Defendants filed a brief in opposition to the motion for leave to file a supplemental expert report.  (Doc. 99.)  The motion for summary judgment, the motion for leave to file a supplemental expert report, and the motion to have that motion deemed unopposed are all ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district court to exercise subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski*, 904 F.3d at 288 (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### BACKGROUND ON THE MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, Third-Party Defendants argue that they are entitled to summary judgment because Third-Party Plaintiffs have failed to produce any expert report or expert testimony establishing a causal link between Robinette's actions and Orr's injuries.  (Doc. 87 at 10.)  Third-Party Plaintiffs disagree, arguing that there is sufficient evidence in the record to establish causation because there is evidence that Collin and Kalathas relied on Robinette's report when they discharged Orr from the emergency room.  (Doc. 92 at 20–21.)  Third-Party Plaintiffs note that their emergency medicine expert, Dr. Daniel Wehner ("Wehner"), testified that it was reasonable for Collin and Kalathas to rely on Robinette's report in making the discharge decision.  (*Id.* at 21–22.)  Third-Party Plaintiffs also argue that if additional expert testimony is needed they should be allowed to produce a supplemental expert report from Wehner that would reach a more explicit conclusion regarding causation.  (*Id.* at 23.)  This argument forms the basis for Third-Party Plaintiffs' related motion for leave to file a supplemental expert report.  (*See* Doc. 93.)  Third-Party Defendants reiterate in their reply brief their argument that Third-Party Plaintiffs have not sufficiently established causation to survive the motion for summary judgment.  (Doc. 95.)

Because the motion for summary judgment is based on a contention that Third-Party Plaintiffs' expert witnesses cannot establish causation, a brief review

9

of the Third-Party Plaintiffs' expert reports is necessary.  The first report comes

from Dr. Muneeb Ahmed ("Ahmed"), a board-certified radiologist.  (Doc. 92-6.)

Ahmed opines that Robinette "did not adequately evaluate the right femoral-

popliteal artery saphenous vein bypass graft."  (*Id.* at 3.)  Ahmed further opines

that the "monophasic waveforms described in the ultrasound report, which

represent diminished arterial inflow from the bypass graft to the lower extremity,

should have been concerning for occlusion of the known right femoral popliteal

bypass graft" and should have "triggered a request for additional images from the

ultrasound technologist."  (*Id.*)  "In sum," Ahmed opines, "Dr. Robinette

specifically should have reported that the diagnostic ultrasound study that she

interpreted did not adequately image the right lower extremity bypass graft."  (*Id.*)

Ahmed opines that Robinette "did not comply with the standard of care required of

a practicing diagnostic radiologist" because she did not correctly identify that

reduced blood flow to the calf could have resulted from proximal graft occlusion,

she did not request additional images of the graft, and she did not tell Collin and

Kalathas that the bypass graft anatomy was not adequately assessed.  (*Id.* at 4.)

    Third-Party Plaintiffs' second expert report comes from Wehner, who is

board certified in emergency medicine.  (Doc. 92-7.)  As relevant to the current

motion for summary judgment, Wehner opines that Collin and Kalathas reasonably

relied on Robinette's findings in reaching their own radiologic decisions.  (*Id.* at

3.)  Wehner states that it was reasonable for Collin and Kalathas "to assume that assessment of blood flow to the calf and foot would include imaging of the graft, and that, if it did not, [Robinette] would have alerted them of the same."  (*Id.*)

DISCUSSION

### A. Third-Party Defendants' Motion for Summary Judgment Is Denied

To establish medical malpractice under Pennsylvania law, a plaintiff must establish "(1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of the harm suffered by the patient; and (4) that the damages suffered were a direct result of that harm." *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997)).  To establish a breach of the physician's duty, the plaintiff must establish "that the defendant's treatment fell below the appropriate standard of care—that is, varied from accepted medical practice."  *Id.* at 314–15 (citing *Scampone v. Highland Park Care Ctr.*, 57 A.3d 582, 596 (2012)).

A plaintiff in a medical malpractice action must present an expert witness who will testify to a reasonable degree of medical certainty that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty of care; and (3) the defendant's breach caused the plaintiff's injuries.  *Id.* (citing *Hightower-Warren*, 698 A.2d at 54).  In reviewing whether an expert can satisfy this standard, a court looks to the substance of the expert's report, and the expert is

11

not required to use "magic words" for the plaintiff to establish duty, breach, or causation. *Welsh v. Bulger*, 698 A.2d 581, 586 (Pa. 1997) (quoting *Mitzelfelt v. Kamrin*, 584 A.2d 888, 894 (Pa. 1990)). To establish causation, "a medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct increased the risk of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm." *Rolon v. Davies*, 232 A.3d 773, 777 (Pa. Super. Ct. 2020) (quoting *Vicari v. Spiegel*, 936 A.2d 503, 510 (Pa. Super. Ct. 2007)).

There is no dispute in this case that Third-Party Plaintiffs have produced sufficient expert testimony to establish that Robinette owed a duty of care and breached that duty. Ahmed's report clearly concludes that Robinette's actions fell below the standard of care. (*See* Doc. 92-6 at 4.) As for causation, although neither Ahmed nor Wehner explicitly opine that Robinette's actions caused Orr's injuries, the substance of Wehner's report could support such a conclusion. Testimony from Collin and Kalathas could establish that they relied on Robinette's findings while treating and subsequently discharging Orr, and Wehner's report concludes that such reliance was reasonable. Therefore, because evidence in the record combined with Wehner's expert testimony could establish that Collin and Kalathas would not have discharged Orr from the hospital but for their reasonable reliance on Robinette's report and that Collin and Kalathas's decision to discharge

Orr led to Orr's leg being amputated, the court finds that Third-Party Plaintiffs have introduced sufficient expert evidence on causation to survive Third-Party Defendants' motion for summary judgment.  Third-Party Defendants' motion for summary judgment is accordingly denied.

### B. Third-Party Plaintiffs' Motion for Leave to Produce a Supplemental Expert Report Is Denied

Having denied the Third-Party Defendants' motion for summary judgment, the court will also deny the Third-Party Plaintiffs' motion for leave to produce a supplemental expert report.  Because the deadline for all expert reports expired on July 18, 2020, *see* Doc. 78 at 1, Third-Party Plaintiffs have to establish good cause for the court to permit them to file a supplemental expert report.  Fed. R. Civ. P. 16(b)(4).  The court finds that good cause for such a modification is not present at this time because the motion for summary judgment has been denied and there is accordingly no need for an additional expert report to supplement Third-Party Plaintiffs' causation evidence at the summary judgment stage.  The court will accordingly deny the motion without prejudice to Third-Party Plaintiffs' right to file a renewed motion for leave to produce a supplemental expert report in preparation for trial.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion for summary judgment and Third-Party Plaintiffs' motion for leave to file a supplemental expert report are denied.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: November 16, 2020

14